**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 09 2013, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JACK LEE, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No.  29A02-1205-CR-384 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Gail Z. Bardoch, Judge
Cause No. 29D06-1107-CM-11085

**January 9, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Jack Lee ("Lee") appeals his conviction and sentence for operating a vehicle while intoxicated, a class A misdemeanor.[1]

We affirm.

## ISSUES

1.    Whether the State presented sufficient evidence to support Lee's conviction;

2.    Whether the trial court committed fundamental error when it admitted testimony about Lee's alcohol consumption; and

3.    Whether Lee's sentence was inappropriate.

## FACTS

On May 23, 2010, Jill Long ("Long") lived with Lee in Anderson, Indiana. That morning, Long walked into the kitchen and saw Lee drinking coffee and talking on the telephone. She also saw a jelly jar containing clear liquid sitting on the kitchen table near Lee. Long recognized the jar as the one from which Lee drank vodka.

After breakfast, Lee and Long decided to go for a ride on Lee's motorcycle, and they packed the motorcycle's saddlebags with cold beer from the refrigerator. As Lee and Long went outside, Lee vomited a clear liquid. Long approached Lee and asked him if he was "all right." (Tr. 40). While Long was standing close to Lee, she detected an odor of alcoholic beverage and noticed that Lee had glassy eyes and was unsteady on his feet. Long was uncertain how much Lee had had to drink and felt unsure about riding

_____

[1] Ind. Code § 9-30-5-2.

with him. Lee accused Long of laughing at him, and, after Long reassured Lee that she was just worried about him, she sat on the back of Lee's motorcycle.

Lee drove the motorcycle to a boat ramp in Perkinsville, where he and Long each consumed a beer with friend and fellow motorcyclist, Tim Weeks ("Weeks"). As they were getting back on their motorcycles to leave the boat ramp, Department of Natural Resources Officer Dave Dungan ("Officer Dungan") briefly talked with them. Long then got on the back of Lee's motorcycle and rode as his passenger. Lee quickly accelerated his motorcycle, pulled in front of Weeks' motorcycle, and headed down Strawtown Pike in Hamilton County, driving at what Long believed to be an approximate speed of sixty miles per hour.

Officer Dungan observed Lee driving on Strawtown Pike at speeds above what he believed to be the posted limit of thirty-five or forty-five miles per hour. The road was hilly and had several S-shaped curves. As Lee rounded one of the curves, Long felt the motorcycle start to wobble, and then Lee and Long were thrown from the motorcycle onto the ground.

Shortly thereafter, Weeks arrived at the scene, moved Lee's motorcycle from the middle of the roadway, and called 911. Officer Dungan and paramedic James Lunsford ("Lunsford") arrived soon thereafter. When Officer Dungan knelt beside Lee, he detected the odor of a consumed alcoholic beverage.

Lunsford determined that Lee was unconscious and in critical condition with possible brain injuries. As Lunsford knelt down next to Lee to assess his breathing, he

3

detected the odor of an alcoholic beverage on Lee's breath. Long was worried that Lee remained unconscious and told Lunsford that Lee had been drinking. Lunsford removed some of Lee's clothes to treat him, and a flask fell out of Lee's jacket.

By this time, Sergeant Fessel of the Hamilton County Sheriff's Department had arrived on the scene. He opened the flask, found that it was not full, and determined that the contents smelled like an alcoholic beverage.

Lee sustained a head injury that required extensive treatment, and he was taken to the hospital in a medical helicopter. As a result of the accident, Long sustained a right knee injury that later required surgery to replace and repair several ligaments. After the surgery, Long received several weeks of physical therapy and was unable walk without assistance for two months.

The State charged Lee with operating a vehicle while intoxicated. Following a bench trial, the trial court found Lee guilty of the charge. At sentencing, the trial court noted that Lee had three other convictions for operating a vehicle while intoxicated and that Lee's passenger, Long, suffered serious injuries when she was thrown from Lee's motorcycle. The trial court imposed a one-year executed sentence and ordered a two-year license suspension. Lee now appeals his conviction and sentence.

<u>DECISION</u>

1.   <u>Sufficiency of the Evidence</u>

Indiana Code § 9-30-5-2 provides that a person commits a class A misdemeanor when the person operates a vehicle while intoxicated "in a manner that endangers a

4

person." Lee contends that the State failed to present sufficient evidence to establish either that he was intoxicated or that he endangered a person.

Our standard of review for sufficiency claims is well settled. In reviewing sufficiency of the evidence claims, this court does not reweigh the evidence or assess the credibility of witnesses. *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005). Not only must the fact-finder determine whom to believe but also what portions of conflicting testimony to believe. *Atwood v. State*, 905 N.E.2d 479, 484 (Ind. Ct. App. 2009), *trans. denied*. We consider only the evidence most favorable to the judgment, together with all reasonable inferences drawn therefrom. *Fields v. State*, 888 N.E.2d 304, 307 (Ind. Ct. App. 2008). The conviction will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Id*. Reversal is appropriate "only when reasonable persons would not be able to form inferences as to each material element of the offense." *Alvies v. State*, 905 N.E.2d 57, 61 (Ind. Ct. App. 2009).

*a. Intoxication*

Lee contends that the State did not present sufficient evidence of intoxication. A person is intoxicated if he or she is under the influence of alcohol "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." I.C. § 9-13-2-86(1). Evidence of any of the following may establish that a person is impaired: (1) consumption of significant amounts of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath;

5

(5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech. *Fields*, 888 N.E.2d at 307.

Here, Long testified that she did not see Lee drink from the jelly jar on the morning of the accident. However, she knew from experience that it contained vodka and that just before getting on the motorcycle Lee vomited a clear liquid. She testified that Lee had glassy eyes, had unsteady balance, and smelled of an alcoholic beverage. Although she did not know how much Lee had had to drink, she knew that he had been drinking and felt uncertain about riding with him. In addition, Lee drank an additional beer while stopped at a boat ramp before speeding down Strawtown Pike.

The evidence also shows that following the accident, Officer Dungan and Lunsford both detected the odor of an alcoholic beverage on Lee. Lunsford found a partially empty flask containing vodka inside Lee's jacket, from which the trial court could infer Lee had been drinking.

The evidence further shows that Lee began driving his motorcycle at a high rate of speed on a hilly and winding road. Long testified that she believed that the motorcycle was going approximately sixty miles an hour in what Officer Dungan believed to be an area where the speed limit was thirty-five to forty-five miles per hour. In the end, Lee crashed.

From this evidence, the trial court could have inferred that Lee was intoxicated and impaired in his ability to operate a motorcycle safely. Lee's argument otherwise is merely an invitation to reweigh the evidence, which we reject.

6

*b. Endangerment*

Lee also contends that he did not endanger a person while operating his motorcycle while intoxicated. The element of endangerment can be established by evidence showing that the defendant's condition or operating manner "could have endangered *any person*, including the public, the police, or the *defendant*." *Vanderlinden v. State*, 918 N.E.2d 642, 644 (Ind. Ct. App. 2009), *trans. denied*. (emphasis added). Proof of endangerment goes beyond mere intoxication; there must be some independent evidence of endangerment. *Id.* at 645-46. Such independent evidence may include proof of excessive speed. *Id.* at 646.

Here, Lee operated his motorcycle at a speed greater than the estimated speed limit on a hilly and winding road. As a result of his speeding while impaired, he wrecked his motorcycle, causing serious injury to both himself and to Long. This evidence supports the trial court's conclusion that Lee operated his motorcycle in a manner that endangered both himself and his passenger.

Lee emphasizes that the speed limit and the speed of his motorcycle are based on estimates. Again, Lee is asking us to reweigh the evidence, which we will not do.

2. <u>Fundamental Error</u>

During the trial on this matter, the following exchange occurred between Long and the deputy prosecutor:

Q.    Were you familiar with seeing a jelly jar at the table with Jack Lee?

7

A. Well, he would drink vodka from it. He would sip it throughout—at different times.

Q. All right.

A. Typically daily.

Q. So that's how he drank his vodka?

A. Yes.

Q. All right. Did you see any type of liquid inside that jelly jar that morning?

A. Yes, I did.

Q. Did you see him sip or drink from that jelly jar at all that morning?

A. No, I did not.

Q. All right. Did you see him that morning at the breakfast table, Jill, consume anything that looked like or you thought might be an alcoholic beverage?

A. I do not recall that.

(Tr. 36-37).

Lee contends that this testimony is prohibited by Indiana Evidence Rule 404(b), which states that evidence of other acts "is not admissible to prove the character of a person in order to show action in conformity therewith." He acknowledges that counsel did not object to the evidence at trial, but he maintains that admission of the evidence constituted fundamental error.

As a general rule, a trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an

8

abuse of discretion. *Gibson v. State*, 733 N.E.2d 945, 951 (Ind. Ct. App. 2000). An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Redding v. State*, 844 N.E.2d 1067, 1069 (Ind. Ct. App. 2006). Failure to make a contemporaneous objection to the admission of evidence results in waiver of any claim of error based upon that evidence. *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010). However, a claim waived may be reviewed on appeal if the reviewing court determines that a fundamental error occurred. *Id.* The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.* (quoting *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)).

The State claims that Long's testimony regarding Lee's daily practice of consuming vodka from a jar is intrinsic to the charged evidence and is therefore not excluded under Indiana Evidence Rule 404(b). The State emphasizes that the rule "does not bar evidence of uncharged acts that are 'intrinsic' to the charged offense." State's Br. at 15 (citing *Wages v. State*, 863 N.E.2d 408, 411 (Ind. Ct. App. 2007), *trans. denied*). Uncharged acts are intrinsic if they "occur at the same time and under the same circumstances as the crimes charged." *Wages*, *id.* (quoting *Holden v. State*, 815 N.E.2d 1049, 1054 (Ind. Ct. App. 2004), *trans. denied*).

We cannot agree with the State's reasoning. Long's testimony regarding Lee's practice of drinking vodka from a jar did not describe an action observed by Long on the

9

day of the accident. Accordingly, it was not an act that was intrinsic to the charged offense.

However, we note that the admission of this evidence does not constitute fundamental error. Long's brief testimony was given during a bench trial, and the trial court is presumed to have used the evidence appropriately. *See Purvis v. State*, 829 N.E.2d 572, 587 (Ind. Ct. App. 2006) (holding that in criminal bench trials, we presume that the trial court disregarded inadmissible testimony and rendered its decision solely on the basis of relevant and probative evidence). At the end of trial, the trial court stated its reasons for finding Lee guilty of the charged offense. The trial court's only comments in reference to Lee's drinking habits was in response to defense counsel's apparent question as to why Long would have ridden on a motorcycle with an intoxicated operator. The trial court did not rely on the evidence as proof of intoxication.

The trial court relied on evidence indicating that (1) Lee vomited a clear liquid immediately before operating the motorcycle; (2) Lee was glassy eyed right after he vomited; (3) Lee was unsteady on his feet right after he vomited; (4) Long smelled the odor of an alcoholic beverage on Lee's person; (5) Officer Dungan smelled the odor of consumed alcohol on Lee; and (6) Lunsford smelled the odor of alcohol on Lee's breath. In answer to Lee's argument that Officer Dungan and Lunsford were smelling the single beer Lee consumed minutes before, the trial court noted that no one smelled alcohol on Long, who had also consumed a single beer minutes before the accident.

The challenged testimony caused no prejudice to Lee. The trial did not rely upon it in reaching its verdict, and the evidence relied upon by the trial court was so strong as to negate any effect of the testimony. In short, Lee's claim of fundamental error fails.

### 3. Inappropriate Sentence

Lee contends that the one-year sentence imposed by the trial court is inappropriate.[2] The revision of a sentence is authorized by the Indiana Constitution through Indiana Appellate Rule 7(B), which provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In determining the appropriateness of a sentence, a court of review may consider any factors appearing in the record. *Schumann v. State*, 900 N.E.2d 495, 497 (Ind. Ct. App. 2009). The "nature of the offense" portion of the appropriateness review begins with the advisory sentence. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on rehearing*, 875 N.E.2d 218 (Ind. 2007). The "character of the offender" portion of the sentence review refers to general sentencing considerations and the relevant aggravating and mitigating circumstances. *Major v. State*, 873 N.E.2d 1120, 1131 (Ind. Ct. App. 2007), *trans. denied*. A defendant bears the burden of persuading us that his sentence is inappropriate. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008).

---

[2] A person who commits a class A misdemeanor shall be imprisoned for a term of not more than one year or be fined more than five thousand dollars. I.C. § 35-50-3-2.

In relation to the nature of the offense, we observe that Lee put more than just himself and other potential victims in danger. His operation of his motorcycle while under the influence of alcohol also put his passenger in danger, causing significant injuries that resulted in surgery and a lengthy recovery period.

In relation to Lee's character, we observe that he has three prior convictions for operating a vehicle while intoxicated. Despite these prior convictions, Lee has continued to drink and drive. Apparently, Lee is neither reformed nor repentant.

The nature of the offense and the character of the offender do not lead us to conclude that the trial court's sentence is inappropriate.[3]

Affirmed.

ROBB, C.J., and MAY, J., concur.

---

[3] Lee refers to Indiana Code § 9-30-5-15(b), which states when a person has at least two previous convictions of operating while intoxicated "he must be imprisoned for at least ten (10) days." He reasons that his prior convictions "are covered by the mandatory ten-day jail sentence imposed under [the statute]." Lee's Br. at 18. Lee clearly reads the words "at least" out of the statute, which is contrary to the basic tenet of statutory interpretation that a statute should not be construed in such a way as to render any part of a statute meaningless or superfluous. *Hatcher v. State*, 762 N.E.2d 189, 192 (Ind. Ct. App. 2002).